Shefali Milczarek-Desai
Workers Rights Clinic
University of Arizona College of Law
1145 N. Mountain Ave.
Tucson, AZ 85719
AZ Bar #021237
Telephone: (520) 626-9950
Fax: (520) 626-5233
shefalimdesai@email.arizona.edu

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Juana Mares Figueroa, in her individual capacity,<br><br>Plaintiff,<br><br>v.<br><br>Serenity Luxury Living, LLC, an Arizona limited liability company, Giselle Auditore, a proprietor /statutory agent,. Giselle Vasquez, proprietor/ statutory agent, Giselle Auditore, in her individual capacity, John Doe Auditore and Giselle Auditore, husband and wife, Giselle Vasquez in her individual capacity, John Doe Vasquez and Giselle Vasquez, husband and wife;<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR STATUTORY VIOLATIONS AND DEMAND FOR JURY TRIAL**<br><br>**Fair Labor Standards Act**<br>**29 U.S.C. § 201** *et seq.*<br><br>**Arizona Minimum Wage Act**<br>**A.R.S. § 23-362** *et seq.* |

Plaintiff Juana Mares Figueroa brings this action against Defendants Serenity Luxury Living, LLC ("SLL"), Giselle Auditore, John Doe Auditore, Giselle Vasquez and John Doe Vasquez. She alleges as follows:

## I.   NATURE OF ACTION

1. This action alleges that Defendants violated the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.*, for their failure to pay overtime wages, and the Arizona Minimum Wage Act, A.R.S. § 23-362 *et seq.*, for failure to pay the minimum hourly wage.

## II. Parties

2. At all relevant times Plaintiff Juana Mares Figueroa was a resident of, and domiciled in, Pima County, Arizona.

3. Defendant Serenity Luxury Living, LLC (hereinafter referred to as SLL) is a licensed Arizona limited liability company that operates institutions engaged in the care of the elderly in Pima County, Arizona. Its principal place of business is located at 5522 E. Burns St.,

   Tucson, Arizona 85711.

4. Defendant Giselle Auditore is the registered statutory agent for Defendant SLL. She is also a resident of, and domiciled in, Pima County, Arizona. She is sued in both her official and individual capacity.

5. Upon information and belief John Doe Auditore, whose name is not now known but will be supplemented upon discovery of his true name, is the husband of Defendant Giselle Auditore. It is believed that Defendant Auditore is now and was at the time of the events giving rise to this lawsuit married and acting for the benefit of the marital community and that any money judgment awarded in this action may be satisfied from the community and individual assets.

6. On information and belief, Defendants Auditore and Vasquez jointly own Defendant SLL.

7. Defendant Giselle Vasquez is a resident of and domiciled in, Pima County Arizona

8. Defendant Vasquez is sued in both her official and individual capacity.

9. Upon information and belief John Doe Vasquez, whose name is not now known but will be supplemented upon discovery of his true name, is the husband of Defendant Giselle Vasquez. It is believed that Defendant Vasquez is now and was at the time of the events giving rise to this lawsuit married and acting for the benefit of the marital community and that any money judgment awarded in this action may be satisfied from the community and individual assets.

### III. JURISDICTION AND VENUE

10. At all relevant times, Ms. Figueroa was an employee as defined under 29 U.S.C. § 203(e)(1) and A.R.S. §§ 23-362(A), 23-371(F).

11. At all relevant times, Defendant SLL was an employer as defined under 29 U.S.C. § 203(d) and A.R.S. § 23-371(G).

12. At all relevant times, Defendant SLL held and continues to hold itself out as a business that provides comprehensive medical services and care to elderly residents who lived at their location. Therefore, it is an employer subject to the FLSA as an enterprise "engaged in the care of … the aged… who reside on the premises of such institution." 29 U.S.C. § 203(s)(1)(B).

13. At all relevant times, SLL directed Ms. Figueroa to "handle… goods or materials," including, but not limited to, cleaning supplies, food products, and prescription medications, "that ha[d] been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). Thus, it is a covered employer and enterprise subject

to the FLSA under 29 U.S.C. § 203(s)(1)(A).

14. At all relevant times, Ms. Auditore acted as an agent for SLL, and in this capacity, she dictated the hours to be worked by, duties to be performed, and wages to be paid to Ms. Figueroa.

15. At all relevant times, Ms. Vasquez acted as an agent for SLL, and in this capacity, she dictated the hours to be worked by, duties to be performed, and wages to be paid to Ms. Figueroa.

16. This court has general and specific personal jurisdiction over SLL because it is incorporated in Pima County, Arizona, and the events giving rise to the action occurred in Pima County, Arizona.

17. This court has general and specific personal jurisdiction over Ms. Auditore because she resides in Pima County, Arizona, and the events giving rise to the action occurred in Pima County, Arizona.

18. This court has general and specific personal jurisdiction over Ms. Vasquez because she resides in Pima County, Arizona, and the events giving rise to the action occurred in Pima County, Arizona.

19. This Court has original subject-matter jurisdiction over Ms. Figueroa's federal overtime wage claims. 28 U.S.C. § 1331.

20. This court has supplemental jurisdiction over Ms. Figueroa's state minimum wage and EPST claims because these claims "are so related to claims" over which original jurisdiction lies "that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

21. Venue is proper because the conduct giving rise to this action occurred in the District of Arizona. 28 U.S.C. § 1391(b)(2). Further, SLL is incorporated in this judicial district, and Defendants Ms. Auditore and Ms. Vasquez reside in this judicial district. 28 U.S.C. § 1391(b)(1).

## IV.   GENERAL ALLEGATIONS

22. Ms. Figueroa worked in the home of Defendant Vasquez from around November 2019 to March 2020.

23. During her employment in the home of Defendant Vasquez, Ms. Figueroa's duties included *inter alia*: cleaning the house and caring for three children, including an infant.

24. During her employment in the home of Defendant Vasquez,, Ms. Figueroa was expected to care for the infant child 24 hours a day with no time off.

25. Except for 4 days off over the Christmas holiday, Ms. Figueroa worked every single day from when she began in November 2019 until March 2020.

26. Throughout this period, Defendants Auditore and Vasquez agreed to pay Ms. Figueroa $50 per day of employment.

27. Ms. Figueroa was expected and permitted to work 24 hours per day, resulting in an effective hourly wage of $2.08.

28. At no point during this period did Defendants pay Ms. Figueroa at the proper Arizona minimum wage rate, $11.00 per hour in 2019, $12.00 per hour in 2020. These actions constitute a policy or practice on the part of Defendants to willfully violate the Arizona Minimum Wage Act..

29. During this period Ms. Figueroa worked approximately 2,928 hours. Under the Arizona Minimum Wage Act this amount of work entitled Ms. Figueroa to $34,056.00, but she was only paid $6,100.00

30. Ms. Figueroa preliminarily calculates that from November 21019 to March 2020, Defendants Vasquez and Auditore underpaid her in an amount no less than $27,956.00. This figure is the difference between the amount Ms. Figueroa was entitled to for her work under the minimum wage law and the amount she was actually paid. This figure excludes prejudgment interest and liquidated damages.

31. Ms. Figueroa began working at Defendant SLL from around October 2020 to April 2021.

32. During her employment at Defendant SLL, Ms. Figueroa's duties included *inter alia*: cleaning the facility, cooking meals for residents, changing resident's diapers, bathing residents, dressing the residents, waking the residents, putting the residents to sleep, attending to residents throughout the night, taking blood pressure measurements for residents, and administering medication to residents.

33. Defendants expected Ms. Figueroa to provide around-the-clock care for residents without any breaks or time off throughout the day. Even when she was sleeping, she was on the clock and expected to get up if a resident needed assistance.

34. From October 2020 to late January 2021, Defendants continued to pay Ms. Figueroa $50 per day. This figure equates to an effective hourly rate of $2.08.

35. From late January 2021 to around March 2021, Defendants agreed to pay Ms. Figueroa $750 per week. This figure equates to an effective hourly rate of $4.46.

6

36. From around March 2021 until the end of employment, Defendants did not pay Ms. Figueroa at all.

37. At no point during this period did Defendants pay Ms. Figueroa at the proper Arizona minimum wage, $12 per hour in 2020 and $12.15 per hour in 2021. These actions constitute a policy and practice on the part of Defendants to willfully violate the Arizona minimum wage law.

38. Defendants expected and permitted Ms. Figueroa to work 168 hours in a seven-day period. However, at no point during this period did Defendants pay Ms. Figueroa at the proper overtime rate for those hours worked over 40 hours in a seven-day period. These actions constitute a policy and practice on the part of Defendants to willfully violate the federal overtime law.

39. From October 2020 to April 2021, Ms. Figueroa worked every single day with the exception of two days.

40. During this period, Ms. Figueroa worked approximately 4,320 hours. Under the Arizona Minimum Wage Act, this amount of work entitled Ms. Figueroa to $52,236, but she was only paid $9,292.

41. During this period, Ms. Figueroa worked approximately 3,280 overtime hours for which she did not receive compensation at the overtime rate. Under the FLSA overtime requirements, this amount of work entitled Ms. Figueroa to $19,830.00 in overtime pay, but she was paid $0 in overtime pay.

42. Ms. Figueroa preliminarily calculates that between October 2020 and April 2021, Defendant SLL and Defendants Vasquez and Auditore underpaid her in an amount

no less than $62,773. This figure is the difference between the amount Ms. Figueroa was entitled to for her work under the Arizona Minimum Wage Act and the FLSA overtime requirements, and the amount she was actually paid. This figure excludes prejudgment interest and liquidated damages.

43. In total, Ms. Figueroa calculates that she was underpaid in an amount no less than $$90,729.00. This total reflects the difference between the amount Defendants actually paid her and the amount Defendants should have paid her if they had complied with the Arizona Minimum Wage Act and the FLSA overtime requirements. This figure also excludes prejudgment interest and liquidated damages.

## COUNT I

**Violation of the FLSA Overtime Provision**
**29 U.S.C. § 207(a)(1)**

44. Ms. Figueroa realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

45. Defendant SLL qualifies as a covered employer subject to the FLSA because it operates an institution that cares for the aged. Further, its employees handle goods that have moved in interstate commerce, such as cleaning supplies, food products, and prescription medications.

46. At all relevant times, Defendants employed Ms. Figueroa at their business to further their activities.

47. During Ms. Figueroa's employment, Defendants Auditore and Vasquez supervised,

managed, and controlled Ms. Figueroa, including the hours she worked, the tasks performed, and the hourly rate she received.

48. Defendants knew or had reason to know that Ms. Figueroa was an hourly employee and that the FLSA required them to pay her at least one and on-half times her regular rate of pay for all hours worked over 40 in a seven-day period. *See* 29 U.S.C. § 207(a)(1).

49. However, at all relevant times, Defendants compensated Ms. Figueroa at her regular rate of pay. They did not pay her overtime compensation at a rate of one and one-half times her regular rate of pay for work performed over 40 hours in a seven-day period.

50. Ms. Figueroa estimates that from October 2020 to April 2021, she worked on average 128 hours over 40 hours in a seven-day period. For example, in a representative seven-day period beginning November 22, 2020. Ms. Figueroa worked 168 hours for Defendants, and she received $2.08 per hour for all 168 hours.

51. In another representative seven-day period beginning February 7, 2021, Ms. Figueroa worked 168 hours for Defendants, and she received $4.46 per hour for all 168 hours.

52. In total, Ms. Figueroa estimates that she worked approximately 3,280 overtime hours for which she did not receive compensation at the overtime rate.

53. At no time during Ms. Figueroa's employment did Defendants make a good-faith effort to comply with the FLSA.

54. Therefore, Defendants' acts and omissions constitute willful and intentional violations of the FLSA. *See* 29 U.S.C. §§ 207(a)(1), 215(a)(2), 255(a).

55. These violations directly and proximately caused Ms. Figueroa to suffer economic damages because she did not receive compensation as required under the FLSA.

56. Ms. Figueroa is entitled to "unpaid overtime compensation[] … and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

57. Further, Ms. Figueroa incurred costs and attorney's fees to which she is entitled reimbursement as a direct and proximate result of Defendants' willful and intentional violations of the FLSA. *See* 29 U.S.C. §216(b).

## COUNT II

### Violation of the Arizona Minimum Wage Act
### A.R.S. § 23-362 *et seq*

58. Ms. Figueroa realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

59. At all relevant times, Ms. Figueroa was an employee as defined under A.R.S. § 23-362(A).

60. At all relevant times, Defendant LLL and Defendants Auditore and Vasquez were employers as defined under A.R.S. § 23-362(B).

61. At all relevant times, Defendant LLL and Defendants Auditore and Vasquez suffered and permitted Ms. Figueroa to work.

62. During Ms. Figueroa's employment, Defendants Vasquez and Auditore supervised, managed, and controlled Ms. Figueroa, including the hours she worked, tasks she

performed, and hourly rate she received.

63. Defendants knew or had reason to know that Ms. Figueroa was covered by the Arizona Minimum Wage Act and entitled to the minimum wage. *See* A.R.S. §§ 23-362(A), 363(A).

64. However, at all relevant times, Defendants compensated Ms. Figueroa below the Arizona minimum wage.

65. At no time did the Defendants make a good-faith effort to comply with the Arizona Minimum Wage Act.

66. Therefore, Defendants' acts and omissions constitute a willful violation of the Arizona Minimum Wage Act. *See* A.R.S. § 23-364(H).

67. These violations directly and proximately caused Ms. Figueroa to suffer economic damage because she did not receive compensation as required under the Arizona Minimum Wage Act.

68. Ms. Figueroa is entitled to "the balance of the wages … owed, including interest thereon, and an additional amount equal to twice the underpaid wages…" *See* A.R.S. § 23-364(G).

69. Further, Ms. Figueroa is incurring costs and attorneys' fees to which she is entitled reimbursement as a direct and proximate result of Defendants Vasquez and Auditore's willful violations of the Arizona Minimum Wage Act. *See* A.R.S. §23-364(G).

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Juana Mares Figueroa requests that the court enter

judgment against Defendants Serenity Luxury Living, Giselle Auditore, and Giselle Vasquez for the following:

    A. An award of unpaid overtime compensation and an equal amount in liquidated damages from October 2020 to April 2021 pursuant to 29 U.S.C. § 216(b);

    B. An award of treble the amount of unpaid minimum wage compensation in liquidated damages since November 2019 pursuant to A.R.S. § 23-364(G);

    C. An award of prejudgment interest at the highest legal rate;

    D. An award of monetary relief that represents Plaintiff's share of FICA, FUTA, Arizona unemployed insurance, and any other required employment taxes;

    E. Plaintiff's costs and attorneys' fees as permitted under 29 U.S.C. § 216(b) and A.R.S. § 23-364(G);

    F. Any other relief against the Defendants as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Juana Mares Figueroa demands a jury trial on all causes of action and claims for which there exists a right to trial by jury

**Respectfully submitted this 14th day of March, 2023.**

                        **Workers Rights Clinic**

                        B<small>Y</small>_____/S/_____

                        Shefali Milczarek-Desai
                        Attorney for Plaintiff